# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
IN RE SUPERIOR COURT SUBPOENA           )
TO NON-PARTY                            )
THOMAS KIRK McCONNELL,                  )
Professional Staff Member of the        )
United States Senate Committee          )
on Armed Services                       )
                                        )
in the matter of                        )
                                        )
AO ALFA-BANK,                           )
                                        )
            Plaintiff,                   )
                                        )
        v.                              )
                                        )
JOHN DOE, et al.,                       )
                                        )
            Defendants.                  )
_____)

Case: 1:21−mc−00100
Assigned To : Friedrich, Dabney L.
Assign. Date : 7/27/2021
Description: Misc.

Misc. No. _____

[Underlying civil action filed in
  Fifteenth Judicial Circuit Court, Palm
  Beach County, Florida,
  Case No. 50-2020-CA-006304]

## MOTION OF SENATE COMMITTEE ON ARMED SERVICES AND
## THOMAS KIRK McCONNELL TO QUASH SUBPOENAS

The United States Senate Committee on Armed Services (the "Committee") and Thomas

Kirk McConnell, Professional Staff Member of the Committee, by and through undersigned

counsel, hereby respectfully move this Court for an order quashing the third-party subpoenas

issued to him by Plaintiff AO Alfa-Bank for deposition testimony and production of documents

in *AO Alfa-Bank v. John Doe, et al.*, Case No. 50-2020-CA-006304, pending in the Circuit Court

for the Fifteenth Judicial Circuit in and for Palm Beach County, State of Florida.  The Florida

state court subpoenas were presented to the D.C. Superior Court and subpoenas issued therefrom

pursuant to the Uniform Interstate Depositions and Discovery Act, D.C. Code, Title 13, Chapter

4A, under Case No. 2021-02459, which were removed to this Court pursuant to 28 U.S.C. § 1442(a).

As set forth in detail in the accompanying Memorandum of Points and Authorities in Support of Motion of Senate Committee on Armed Services and Thomas Kirk McConnell to Quash Subpoenas, the grounds for this motion are: (a) sovereign immunity precludes enforcement of state-court subpoenas against officials and employees of the federal government; and (b) the Speech or Debate Clause of the Constitution protects Senators and their aides from being compelled to testify or provide documents regarding their activities, communications, or deliberations within the legislative sphere.

Respectfully submitted,

/s/ Patricia Mack Bryan
Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

Dated: July 27, 2021

Attorneys for U.S. Senate Committee on Armed Services and Subpoena-Respondent Thomas Kirk McConnell

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| IN RE SUPERIOR COURT SUBPOENA | ) | |
| TO NON-PARTY | ) | |
| THOMAS KIRK McCONNELL, | ) | |
| Professional Staff Member of the | ) | |
| United States Senate Committee | ) | |
| on Armed Services | ) | |
| | ) | |
| in the matter of | ) | |
| | ) | Misc. No. _____ |
| AO ALFA-BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | [Underlying civil action filed in |
| | ) | Fifteenth Judicial Circuit Court, Palm |
| JOHN DOE, *et al.*, | ) | Beach County, Florida, |
| | ) | Case No. 50-2020-CA-006304] |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION OF SENATE COMMITTEE ON ARMED SERVICES AND
THOMAS KIRK McCONNELL TO QUASH SUBPOENAS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Allegations of Internet Communications Between
           Alfa Bank and Trump Organization Servers. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Plaintiff Alfa Bank's Suit in Florida State Court . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.    Alfa Bank's Request for Information from Thomas
           Kirk McConnell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      D.    Alfa Bank's Subpoenas to Thomas Kirk McConnell . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      Sovereign Immunity Precludes Enforcement of These Subpoenas. . . . . . . . . . . . . . . 10

II.     The Speech or Debate Clause Protects Senators and Their
        Staff From Being Compelled to Testify or Produce Documents
        Regarding Matters Withing the Legislative Sphere. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

**Cases**:

*Arizona v. Manypenny*, 451 U.S. 232 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ass'n of Am. Physicans and Surgeons v. Schiff*, — F. Supp. 3d —,
   Civil Action No. 20-106 (RC), 2021 WL 354174 (D.D.C. Feb. 2, 2021),
   *appeal docketed*, No. 21-5080 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Barenblatt v. United States*, 360 U.S. 109 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408
   (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16, 17, 25, 26, 27

*Cartwright v. Walsh,* Misc. Action No. 3:18-0014, 2018 WL 461236
   (M.D. Pa. Jan. 18, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Citizens Union of New York v. Attorneys Gen. of New York*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Clark v. Library of Congress*, 750 F. 2d 89 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*COMSAT Corp. v. Nat'l Science Foundation*, 190 F.3d 269 (4th Cir. 1999) . . . . . . . . . . . . . . . 15

*Connaught Laboratories, Inc. v. SmithKline Beecham P.L.C.*,
   7 F. Supp. 2d 477 (D. Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Danihel v. Office of the President of the Untied States*, 616 F. App'x 467
   (3rd Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Doe v. McMillan*, 412 U.S. 306 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dominion Cogen, D.C., Inc. v. District of Columbia*, 878 F. Supp. 258
   (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Edwards v. U.S. Dep't of Justice*, 43 F.3d 312 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Estate of Pal v. Barcode Corp*, Misc. Action No. 19-109 (CKK),
   2019 WL 4709902 (D.D.C. Sept. 26, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 15

*Eastland v. U.S. Serviceman's Fund*, 421 U.S. 491 (1975) . . . . . . . . . . . 2, 16, 17, 18, 24, 27, 28

*FBI v. Superior Court of Cal.*, 507 F. Supp. 2d 1082 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . 12

*FDIC v. Meyer*, 510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gardner v. Michigan State University*, No. 1:12-cv-1018,  2013 WL
    5320282 (W.D. Mich. Sept. 20, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gravel v. United States*, 408 U.S. 606 (1972)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17, 18, 26

*Helstoski v. Meanor*, 442 U.S. 500 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Houston Business Journal, Inc. v. Office of the Comptroller of the Currency*,
    86 F.3d 1208 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 14, 15

*Howard v. Office of Chief Administrative Officer of U.S. House of
    Representatives*, 720 F.2d 939 (D.C. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Chapman*, 166 U.S. 661 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Elko County Grand Jury*, 109 F.3d 554 (9th Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Grand Jury Subpoenas*, 571 F.3d 1200 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Subpoena Duces Tecum*, No. 14-MC-035-DRH, 2014 WL 1718282
    (S.D. Ill. Apr. 30, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Subpoena in Collins*, 524 F.3d 249 (D.C. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Keener v. Congress*, 467 F.2d 952 (5th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kentucky v. Graham*, 473 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kilbourn v. Thompson*, 103 U.S. 168 (1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 24

*Lane v. Pena*, 518 U.S. 187 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Liverman v. Committee on the Judiciary, U.S. House of Representatives*,
    51 F. App'x 825 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Maarawi v. U.S. Congress*, 24 F. App'x 43 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McCarthy v. Pelosi*, — F.4th —, 2021 WL 3043280
    (D.C. Cir. July 20, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*McLean v. United States*, 566 F.3d 391 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McGrain v. Daugherty*, 273 U.S. 135 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 28

*McSurely v. McClellan*, 553 F.2d 1277 (D. C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856 (D.C. Cir. 1988) . . . . . . . 16, 18

*Miller v. Transamerican Press*, 709 F.2d 524 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 17, 24

*Pollock v. Barbosa Group, Inc.*, 478 F. Supp. 2d 410 (W.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . 12

*Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Rockefeller v. Bingaman*, 234 F. App'x 852 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Santini v. Herman*, 456 F. Supp. 2d 69 (D.D.C.  2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*SEC v. Committee on Ways and Means*, 161 F. Supp. 3d 199 (S.D.N.Y. 2015) . . . . . . . . . 12, 13

*Smith v. Cassidy*, No. 14–647–SDD–SCR, 2015 WL 803145
        (M.D. La. Feb. 25, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14, 15

*State of Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stauffer v. Miller*, No. 14-MC-454, 2014 WL 12539886
        (D.D.C. Jul. 16, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tavoulareas v. Piro*, 93 F.R.D. 11 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Torres-Estrada v. Garcia-Garcia*, 99 F. Supp. 3d (D.P.R. 2015) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vanover v. Hantman*, 77 F. Supp. 2d 91 (D.D.C. 1999), *aff'd*,
        38 F. App'x 4 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Voinche v. Fine*, 278 F. App'x 373 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246
        (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Wallace v. U.S. Senate Select Committee on Ethics*, Case: 1:14-cv-01931,
        2014 WL 6439695 (D.D.C. Nov. 17, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Williams v. Johnson*, 597 F. Supp 2d 107 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24


**Constitution and Statutes:**

U.S. Const. art. I, § 6, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

5 U.S.C. § 701(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 1442(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10

John S. McCain National Defense Authorization Act of FY 2019,
      Pub. L. No. 115-232, Div. A, Title XVI, Subtitle C (2018) . . . . . . . . . . . . . . . . . . . . . 23

National Defense Authorization Act of FY 2020,
      Pub. L. No. 116-92, Div. A, Title XVI, Subtitle C (2019) . . . . . . . . . . . . . . . . . . . . . . 23

National Defense Authorization Act of FY 2018,
      Pub. L. No. 115-91, Div. A, Title XVI, Subtitle C (2017) . . . . . . . . . . . . . . . . . . . . . . 23

William M. (Mac) Thornberry National Defense Authorization Act for FY 2021,
      Pub. L. No. 116-283, Div. A, Title XVII (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fla. Stat. Ann. § 772.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


**Congressional Material:**

S. Res. 316, 117th Cong., 1st Sess. (2021), *reprinted in* 167 Cong. Rec.
      S5054-55 (daily ed. July 22, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

167 Cong. Rec. 5055 (daily ed. July 22, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

S. Res. 400, Sec. 2(a)(3)(B), 94th Cong., 2d Sess. (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*China and Russia: Hearings Before the Senate Comm. on Armed Services*,
      S. Hrg. No. 116-263 (2019), *available at*
      https://www.govinfo.gov/content/pkg/CHRG-116shrg41302/pdf/
      CHRG-116shrg41302.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cyber-Enabled Information Operations: Hearings Before the Subcomm. on Cybersecurity of the Senate Comm. on Armed Services*, S. Hrg. No. 115-426 (2017), *available at* https://www.govinfo.gov/content/pkg/CHRG-115shrg34175/pdf/ CHRG-115shrg34175.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Cyber Strategy, Policy, and Organization: Hearings Before the Senate Comm. on Armed Services*, S. Hrg. No. 115-181 (2017), *available at* https://www.govinfo.gov/content/pkg/CHRG-115shrg28907/pdf/ CHRG-115shrg28907.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Foreign Cyberthreats to the United States: Hearing Before the Senate Comm. on Armed Services*, S. Hrg. No. 115-418 (2017), *available at* https://www.govinfo.gov/content/pkg/CHRG-115shrg33940/pdf/ CHRG-115shrg33940.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Report of the Senate Select Comm. on Intelligence for the period of Jan. 3, 2017 to Jan. 3, 2019*, S. Rep. No. 116-20 (2020), *available at* https://www.govinfo.gov/content/pkg/ CRPT-116srpt20/pdf/CRPT-116srpt20.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Russian Active Measures, Campaigns, and Interference in the 2016 U.S. Election: Report of the Senate Select Comm. on Intelligence*, S. Rep. No. 116-290 (2020), *available at* https://www.govinfo.gov/content/pkg/CRPT-116srpt290/pdf/ CRPT-116srpt290.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*The Department of Defense's Role in Protecting Democratic Elections: Hearings Before the Subcomm. on Cybersecurity of the Senate Comm. on Armed Services*, S. Hrg. No. 115-862 (2018), *available at* https://www.govinfo.gov/content/pkg/ CHRG-115shrg44117/pdf/CHRG-115shrg44117.pdf . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*The Roles and Responsibilites for Defending the Nation from Cyber Attack: Hearings Before the Senate Comm. on Armed Services*, S. Hrg. No. 115-597 (2017), *available at* https://www.govinfo.gov/content/pkg/CHRG-115shrg36192/pdf/ CHRG-115shrg36192.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Miscellaneous:**

Dexter Filkins, *Was There a Connection Between a Russian Bank and the Trump Campaign?*, THE NEW YORKER, Oct. 8, 2018 . . . . . . . . . . . . . . . . . . 4

Eric Lichtblau, *Question Remain About Putin's Request for a
        Back Channel to Trump Transition*, TIME, May 21, 2019. . . . . . . . . . . . . . . . . . . . . . . . 4

Franklin Foer, *Was a Trump Server Communicating with Russia?*,
        SLATE, Oct. 31, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Office of the Director of National Intelligence, *Assessing Russian Activity
        and Intentions in Recent US Elections*, Intelligence Community
        Assessment ICA-2017-01D (Jan. 6, 2017), *available at*
        https://www.dni.gov/files/documents/ICA_2017_01.pdf. . . . . . . . . . . . . . . . . . . . . . . 3

## INTRODUCTION

AO Alfa-Bank ("Alfa Bank"), a major commercial bank headquartered, registered, and licensed in the Russian Federation, issued two subpoenas from District of Columbia Superior Court to Thomas Kirk McConnell, a Professional Staff Member of the U.S. Senate Committee on Armed Services (the "Committee"), seeking to compel deposition testimony and the production of documents from him regarding his work for the Committee.  Subpoenas attached as Exhibits A & B.  The subpoenas were issued as part of a pending lawsuit in Florida state court filed by Alfa Bank in June 2020 against a group of unnamed "John Doe" defendants.  In that suit, Alfa Bank alleges that the unidentified defendants conspired in using cyber tools to generate Domain Name System ("DNS") data to create the appearance of internet communications between computer servers of Alfa Bank and a server of the Trump Organization during 2016 and 2017, and then disseminated their claims to the media and others.  Alfa Bank asserts that the publicity generated by these allegations created a false impression that Alfa Bank had communicated with the Trump Organization to coordinate Russian election-interference efforts, and that this publicity caused damage to Alfa Bank's business.

In the year since filing its lawsuit, Alfa Bank has served numerous subpoenas to third-parties, including the two subpoenas to Mr. McConnell, as part of its effort to identify the unknown "John Doe" defendants.  The two subpoenas to Mr. McConnell, which issued first from the Florida court and then were filed and issued from the D.C. Superior Court, seek to compel testimony and production of Committee documents on a broad segment of topics involving Mr. McConnell's efforts on behalf of the Committee to gather and analyze information about the allegations that DNS data indicated possible internet communications between servers of Alfa

1

Bank and the Trump Organization in 2016 and 2017.  Upon receipt of the subpoenas, the Senate

authorized the Senate Legal Counsel to represent Mr. McConnell and the Committee.  S. Res.

316, 117th Cong., 1st Sess. (2021), *reprinted in* 167 Cong. Rec. S5054-55 (daily ed. July 22,

2021).  Senate Legal Counsel, on behalf of Mr. McConnell and the Committee, removed the

subpoenas to this Court pursuant to 28 U.S.C. § 1442(a), and now respectfully moves to quash

the subpoenas.

These subpoenas, which seek Committee information and impermissibly intrude into

Committee activities, should be quashed in their entirety on two grounds.  First, the subpoenas

seek to compel testimony and document production from Mr. McConnell in his capacity as a

staff member of the Committee and, thus, are barred by sovereign immunity, which precludes

enforcement of state-court subpoenas against officials and employees of the federal government.

*See Houston Business Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208,

1211-13 (D.C. Cir. 1996).  Second, the subpoenas seek testimony and documents that are

absolutely privileged under the Speech or Debate Clause of the Constitution.  That Clause

protects Senators and their aides from being compelled to testify or provide documents regarding

their activities, communications, or deliberations within the legislative sphere.  *See Eastland v.*

*United States Servicemen's Fund*, 421 U.S. 491, 502 (1975).  Alfa Bank's subpoenas seek to

compel Mr. McConnell to testify about, and produce Committee documents relating to, his

efforts on behalf of the Committee to gather information about the allegations that DNS data

reflected clandestine internet communications between Alfa Bank and the Trump Organization.

Mr. McConnell's activities were undertaken to inform the Committee in its legislative,

investigative, and oversight responsibilities, and thus those actions, and the information he

2

collected for the Committee, are protected by the Speech or Debate Clause against any attempt to compel their disclosure from the Committee or its staff.  *See Gravel v. United States*, 408 U.S. 606, 625 (1972); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415-21 (D.C. Cir. 1995).

Accordingly, the subpoenas to Mr. McConnell should be quashed.

## BACKGROUND

A.    Allegations of Internet Communications Between Alfa Bank and Trump Organization Servers

In October 2016, an article in *Slate* magazine reported allegations that Domain Name System (DNS) query data appeared to indicate the possibility of internet communications between Alfa Bank and Trump Organization computer servers.  *See* Franklin Foer, *Was a Trump Server Communicating with Russia?*, SLATE, Oct. 31, 2016.  According to the *Slate* article, a group of computer scientists and internet data experts had identified DNS query data showing numerous DNS queries (or "look-ups") between Alfa Bank and Trump Organization servers, and there was speculation as to whether such queries between the servers indicated communications between the two organizations.  Given the widespread and grave concerns over Russian malign interference in the 2016 election,[1] research and investigations were conducted into this allegation, including within Congress, *see, e.g.*, *Russian Active Measures, Campaigns, and Interference in the 2016 U.S. Election, Report of the Senate Select Comm. on Intelligence*, S. Rep. No. 116-290, at 1181-86 (2020), *available at* https://www.govinfo.gov/content/pkg/CRPT-116srpt290/

---

[1]   *See, e.g.*, Office of the Director of National Intelligence, *Assessing Russian Activity and Intentions in Recent US Elections*, Intelligence Community Assessment ICA-2017-01D (Jan. 6, 2017), *available at* https://www.dni.gov/files/documents/ICA_2017_01.pdf.

3

pdf/CRPT-116srpt290.pdf, as well as further public reporting on the matter.  *See* Dexter Filkins,

*Was There a Connection Between a Russian Bank and the Trump Campaign?*, THE NEW

YORKER, Oct. 8, 2018; Eric Lichtblau, *Questions Remain About Putin's Request for a Back*

*Channel to Trump Transition*, TIME, May 21, 2019 (discussing allegations that DNS data

appeared to reveal communications between Alfa Bank and Trump Organization servers).

According to the Senate Intelligence Committee report, Alfa Bank retained a cyber incident

response firm to conduct an internal review of the DNS data allegations, and that review "found

no evidence of substantive communications between Alfa Bank and the Trump Organization,"

and the cyber firm formed a "working hypothesis" that the DNS activity may have resulted from

"a marketing or spam campaign directed at Alfa Bank employees by a marketing server affiliated

with the Trump Organization."  S. Rep. No. 116-290 at 1186.  "Based on the FBI's assessment,

the [Intelligence] Committee did not find that the DNS activity reflected the existence of

substantive or covert communications between Alfa Bank and Trump Organization personnel.

However, the Committee also could not positively determine an intent or purpose that would

explain the unusual activity."  *Id.* at 1182.

      B.      Plaintiff Alfa Bank's Suit in Florida State Court

      On June 11, 2020, Alfa Bank filed in the 15th Judicial Circuit Court for Palm Beach

County, Florida, the underlying civil action from which it issued the two subpoenas to Mr.

McConnell.  *AO Alfa-Bank v. John Doe, et al.*, 50-2020-CA-006304, Complaint attached hereto

as Exhibit C.  That suit was brought against an unspecified number of pseudonymous "John

Doe" defendants asserting claims under the Florida Civil Remedies for Criminal Practices Act,

Fla. Stat. Ann. § 772.101 *et seq.*, referred to as the "Florida RICO" statute.  In its complaint, Alfa

Bank alleges that a group of unidentified persons "perpetrated a sustained series of highly sophisticated cyberattacks against it in 2016 and 2017."  Compl. ¶ 2.  Specifically, Alfa Bank alleges that this group of persons conspired as part of a "Disinformation Enterprise," *id.* ¶ 13, that used spoofed e-mails and other cyber tools to generate DNS data to create the appearance of communications between computer servers of Alfa Bank and a server of the Trump Organization during 2016-17.  *Id.* ¶¶ 5-6, 31-39.  The suit further alleges that the unnamed defendants alerted computer scientists and researchers to the DNS data they had generated, and those scientists and researchers further disseminated the data to the media and others, thereby generating negative publicity and attention damaging to Alfa Bank.  *Id.* ¶¶ 7, 48-52.  Alfa Bank's complaint pleads two causes of action against the unknown defendants for violations of the Florida RICO statute, and requests treble monetary damages for relief.  *Id.* ¶¶ 67-82, and Relief Requested.

Since the filing of the suit over a year ago, Alfa Bank has served over 40 third-party subpoenas seeking information regarding the identities of the John Doe defendants.  *See* Docket, *AO Alfa-Bank v. John Doe, et al.*, Case No. 50-2020-CA-006304 (Fla. 15th Cir. Ct.).  As yet, no actual person or entity has been named or served as a defendant in the lawsuit.

C.      Alfa Bank's Request for Information from Thomas Kirk McConnell

In March 2021, Alfa Bank's counsel contacted the Office of Senate Legal Counsel seeking information from Thomas Kirk McConnell, a Professional Staff Member of the Senate Committee on Armed Services.  Senate counsel advised Alfa Bank's counsel on the usual process for requesting information from the Senate, namely that counsel should send a letter explaining what information Alfa Bank sought, how the requested information related to the underlying suit, and whether such information was available from other, non-Senate sources.

5

Alfa Bank's counsel then sent a March 26, 2021 letter laying out its request for information.  *See*

Letter from Margaret E. Krawiec to Thomas E. Caballero, Mar. 26, 2021, attached as Exhibit D.

In that letter, counsel explained that Alfa Bank was seeking "discovery from a number of third

parties in an effort to uncover the identities of the unknown John Doe defendants," *id.* at 2, but

made clear that they were not alleging that Mr. McConnell was a "John Doe" defendant.  *See id.*

at 1 ("We do not have reason to believe that Mr. McConnell is a John Doe defendant or has

engaged in wrongdoing in connection with the underlying litigation.").  The letter then requested

information concerning: the circumstances surrounding Mr. McConnell's initial awareness of the

server allegations; the circumstances surrounding Mr. McConnell's receipt of data and other

documents from someone who went by the name "John Galt" and others, including Mr.

McConnell's views as to the identity of "John Galt"; the data and other documents that Mr.

McConnell obtained from "John Galt" and/or directed to Dan Jones[2]; the actions that Mr.

McConnell took after receiving the data and any documents from "John Galt" and/or learning

about such data; Mr. McConnell's outreach to Mr. Jones; Mr. McConnell's involvement in Mr.

Jones's analysis; Mr. McConnell's knowledge of and communications with researchers involved

with the server allegations; and the timeline of Mr. McConnell's actions related to the server

allegations.  *Id.* at 2.

    Senate counsel responded by letter on behalf of the Committee on Armed Services, Letter

from Thomas E. Caballero to Margaret E. Krawiec, Apr. 8, 2021, attached as Exhibit E,

explaining that the information sought from Mr. McConnell was part of his legislative work for

---

    [2] Dan Jones is a former staff member of the Senate Select Committee on Intelligence
who leads a research and investigative consultancy and a non-profit that engages in research and
global investigations regarding governance and transparency.

the Committee and, thus, was Committee information subject to the Committee's control, and

that, under Senate rules, Senate committees may not provide evidence for use in legal

proceedings without approval of the Senate.  Senate counsel's letter further explained that all the

information sought by the letter request was constitutionally privileged under the Speech or

Debate Clause, U.S. Const. art. I, § 6, cl. 2.  Exhibit E at 2-3.  The letter also noted that Alfa

Bank's expansive requests for information from the Committee went far beyond the stated need

to identify the unknown defendants.  *Id.* at 2.  In conclusion, the letter stated that "Alfa Bank's

broad requests seek constitutionally privileged information without any attempt to minimize

intrusion upon protected Committee activities.  Accordingly, the Committee declines to provide

information[.]" *Id.* at 3.

　　In response, Alfa Bank sent a second request letter arguing that the information it was

seeking was not privileged under the Speech or Debate Clause or, if it was, that the privilege had

been waived.  Letter from Margaret E. Krawiec to Thomas E. Caballero, Apr. 16, 2021, attached

as Exhibit F.   Alfa Bank's second letter did narrow somewhat its requests to "accommodat[e]

the Committee's concerns," and submitted seven revised requests, all of which focused on any

interactions Mr. McConnell had with someone going by the name "John Galt."  *Id.* at 3-4.  The

Committee responded by refuting Alfa Bank's assertions that the matters at issue were not

covered by the Speech or Debate Clause or that the Clause's protection had been waived.  Letter

from Thomas E. Caballero to Margaret E. Krawiec, Apr. 28, 2021, attached as Exhibit G.

Nonetheless, responding to the specific inquiries, the Committee informed Alfa Bank's counsel,

"without waiving the protection of the Speech or Debate Clause, that Mr. McConnell has, to the

best of his knowledge, never had any contact with someone going by that name ["John Galt"],"

and that, in fact, "Mr. McConnell had never even heard the name 'John Galt' before you raised it in your request for information." *Id.* at 2.

Alfa Bank's counsel followed with a third letter that, without explanation and without acknowledging the Committee's response to Alfa Bank's revised inquiries, reverted back to broad requests for information similar to its original requests, though without any reference to "John Galt."  Letter from Margaret E. Krawiec to Thomas E. Caballero, May 13, 2021, attached as Exhibit H, at 3.  In addition, Alfa Bank continued to argue that the Speech or Debate Clause privilege did not apply to the requested information or had been waived even if it did apply, *id.* at 1-3, and stated that it would issue subpoenas to compel production of the Committee information if the Committee failed to provide responses to its requests.  *Id.* at 4.

Senate counsel, on behalf of the Committee, responded to this letter by again explaining the basis for its view that the information Alfa Bank was seeking falls squarely within the "legislative sphere" and is absolutely privileged by the Speech or Debate Clause, and that no action by the Committee has waived its privilege.  Letter from Thomas E. Caballero to Margaret E. Krawiec, May 25, 2021, attached as Exhibit I.  The letter informed Alfa Bank that as its requests "continue to seek constitutionally privileged information that intrudes broadly into the Committee's performance of its constitutional responsibilities on behalf of the Senate, . . . the Committee declines to provide the requested information."  *Id.* at 2.

D.      Alfa Bank's Subpoenas to Thomas Kirk McConnell

On July 19, 2021, Alfa Bank served two subpoenas on Mr. McConnell – a subpoena for the production of documents (Exhibit B) and a subpoena for videotaped deposition with accompanying notice of deposition (Exhibit A).  The subpoenas originally were issued in the

8

Fifteenth Judicial Circuit Court for Palm Beach County, Florida.  The Florida state court

subpoenas were then presented to the D.C. Superior Court and subpoenas issued therefrom

pursuant to the Uniform Interstate Depositions and Discovery Act, D.C. Code, Title 13, Chapter

4A, under Case No. 2021-02459.

The documentary subpoena (Exhibit B) requires production within 21 days (by August 9),

of four broad categories of records, as follows:

1.    Communications, documents, and computer data concerning the
identity of the anonymous source or sources, including intermediaries, who
transmitted information or data to you or Daniel Jones concerning allegations of
secret communications between the Trump Organization and Alfa Bank.

2.    Communications, documents, and computer data concerning
allegations of secret communications between the Trump Organization and Alfa
Bank that you obtained from the anonymous source or sources and/or directed to
Daniel Jones.

3.    Communications, documents, and computer data concerning the
actions that you took in connection with computer data or documents relating to
the computer data provided by the anonymous source or sources, to the extent
those actions involved distributing or facilitating the distribution of data or
documents to individuals or entities outside Congress, including the identity of
these individuals or entities.

4.    Communications, documents, and computer data relating to
allegations of secret communications between Alfa Bank and the Trump
Organization that you distributed or facilitated distributing to individuals or
entities outside Congress (including but not limited to Daniel Jones), including the
identity of these individuals or entities.

The deposition subpoena and notice (Exhibit A) requires the appearance of Mr.

McConnell at a videotaped deposition on August 24, 2021, to testify about six areas:

1.    Non-privileged information concerning the circumstances surrounding Mr.
McConnell's initial awareness of the source of computer data, including
DNS lookups, that allegedly connected Alfa Bank to the Trump
Organization (collectively, the "DNS data");

2.    Non-privileged information concerning the identity of the individual or individuals, including intermediaries, who transmitted the DNS data to Daniel Jones (collectively, the "source") in 2016 or 2017;

3.    Non-privileged information concerning the DNS data and other documents relating to the DNS data that Mr. McConnell obtained from the sources and/or directed to Mr. Jones;

4.    Non-privileged information concerning communications Mr. McConnell exchanged with Mr. Jones relating to the DNS data, including Mr. McConnell's involvement in any analysis conducted by Mr. Jones;

5.    Non-privileged information concerning whether Mr. McConnell distributed or facilitated the distribution of the DNS data or documents relating to the DNS data provided by the source to individuals or entities outside Congress, and if so, to whom; and

6.    Information related to documents produced by Mr. McConnell to Alfa Bank.

On July 22, 2021, the Senate adopted a resolution authorizing Senate Legal Counsel to represent Mr. McConnell and the Committee to move the Court to quash the subpoenas.  S. Res. 316, 117th Cong., 1st Sess. (2021), *reprinted in* 167 Cong. Rec. S5054-55 (daily ed. July 22, 2021).   On behalf of Mr. McConnell and the Committee, Senate Legal Counsel removed the subpoenas to this Court pursuant to 28 U.S.C. § 1442(a).

## ARGUMENT

### I.    Sovereign Immunity Precludes Enforcement of These Subpoenas.

Absent an express waiver, sovereign immunity shields the federal government from suit or other judicial proceedings.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  This immunity protects both federal government entities and federal officials and employees sued in their official capacity, as "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998) (stating that, in case involving state-court

subpoena to federal employee, "It is . . . clear that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to the governmental privilege of sovereign immunity.").

As this Circuit and other courts have held, in addition to barring suit against federal employees in their official capacities, the federal government's sovereign immunity protects federal employees from being compelled to testify or produce documents by state-court subpoenas. *See Houston Business Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1211 (D.C. Cir. 1996) ("In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena."); *In re Subpoena in Collins*, 524 F.3d 249, 251 (D.C. Cir. 2008) ("A state subpoena commanding a federal agency to produce its records or have its employees testify about information obtained in their official capacities violates federal sovereign immunity."); *Estate of Pal v. Barcode Corp.*, No. 19-MC-109, 2019 WL 4709902, at *2 (D.D.C. Sept. 26, 2019); *Stauffer v. Miller*, No. 14-MC-454, 2014 WL 12539886, at *3 (D.D.C. Jul. 16, 2014) ("Sovereign immunity prevents federal agencies from being compelled to respond to subpoenas issued by a State court."); *Santini v. Herman*, 456 F. Supp. 2d 69, 71 (D.D.C. 2006); *see also State of Louisiana v. Sparks*, 978 F.2d 226, 234-36 (5th Cir. 1992) (quashing state-court subpoena to federal probation officer on sovereign immunity grounds); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70-71 (4th Cir. 1989) (non-party federal employee protected from state court subpoena by sovereign immunity); *Smith v. Cromer*, 159 F.3d at 879-81; *In re Elko County Grand Jury*, 109 F.3d 554 (9th Cir. 1997) (state court lacked jurisdiction to compel a Forest Service employee to appear and testify before grand jury in contravention of USDA regulations); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 316-17 (7th

11

Cir. 1994).[3]  Consequently, because of sovereign immunity, courts lack jurisdiction to enforce state-court subpoenas against federal officials.

As part of the federal government, Congress, its committees, and its Members and employees, when named in their official capacities in lawsuits or subpoenas, are covered by federal sovereign immunity.  *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (affirming dismissal of suit against Senator and Representative in their official capacities on sovereign immunity grounds); *Danihel v. Office of the President of the United States*, 616 F. App'x 467, 470 n.2 (3d Cir. 2015) (Members of Congress protected); *Voinche v. Fine*, 278 F. App'x 373 (5th Cir. 2008) (same); *Wallace v. U.S. Senate Select Committee on Ethics*, No. 1:14–cv–01931, 2014 WL 6439695 (D.D.C. Nov. 17, 2014) (Senate Ethics Committee); *Liverman v. Committee on the Judiciary, U.S. House of Representatives*, 51 F. App'x 825, 826 (10th Cir. 2002) (congressional committee); *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) (Congress protected by sovereign immunity); *Maarawi v. U.S. Congress*, 24 F. App'x 43, 44 (2d Cir. 2001) (same); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (same); *Smith v. Cassidy*, No. 14–647–SDD–SCR, 2015 WL 803145, at *3 (M.D. La. Feb. 25, 2015) (constituent's suit against Congressman for failure to take requested action barred by sovereign immunity); *SEC v. Committee on Ways and Means*, 161 F. Supp. 3d 199, 217 & n.5 (S.D.N.Y. 2015) (stating that "cases demonstrate that the doctrine of sovereign immunity []

---

[3]  *Accord Connaught Laboratories, Inc. v. SmithKline Beecham P.L.C.,* 7 F. Supp. 2d 477, 479 (D. Del. 1998); *Pollock v. Barbosa Group, Inc*., 478 F. Supp. 2d 410 (W.D.N.Y. 2007); *FBI v. Superior Court of Cal*., 507 F. Supp. 2d 1082, 1094 (N.D. Cal. 2007); *In re Subpoena Duces Tecum*, No. 14-MC-035, 2014 WL 1718282, at *1 (S.D. Ill. Apr. 30, 2014); *Gardner v. Michigan State Univ.*, No. 1:12-cv-1018, 2013 WL 5320282, at *2 (W.D. Mich. Sept. 20, 2013); *Torres-Estrada v. Garcia-Garcia*, 99 F. Supp. 3d 232 (D.P.R. 2015).

encompasses Congress and Members of Congress acting in their official capacities"); *Cartwright v. Walsh,* No. 3:18-mc-0014, 2018 WL 461236, at *2 (M.D. Pa. Jan. 18, 2018) (quashing state court subpoenas to Congressman and his employee on sovereign immunity grounds).

Mr. McConnell is a Professional Staff Member of the Senate Armed Services Committee, who has primary responsibility on the Committee staff for the subject area of cybersecurity of Internet Protocol networks affecting national security, including the threat of influence operations and election interference conducted through cyberspace. *See* Declaration of Elizabeth L King, Majority Staff Director, Committee on Armed Services ¶¶ 4-5 [hereinafter "King Decl." attached as Exhibit J]. As explained in the accompanying declaration of the Committee's Majority Staff Director, who is Mr. McConnell's supervisor, "Mr. McConnell has worked extensively on the Committee's efforts to understand and counter Russian malign cyber activities and Russian efforts to interfere in U.S. elections, including through the informal gathering and analysis of information about these matters." *Id.* ¶ 8. "As part of his work collecting and reviewing information regarding Russian malign cyber activities and interference in U.S. elections, Mr. McConnell examined for the Committee the publicly-reported allegations regarding possible internet communications between Alfa Bank and the Trump Organization servers by gathering information and analysis from contacts with relevant expertise both within and outside of Congress" *Id.* ¶ 10. There can be no serious question, then, that the information these subpoenas seek was acquired by Mr. McConnell as part of his duties for the Committee; indeed, the information sought from him is Committee information. Accordingly, Mr. McConnell is protected from these subpoenas by sovereign immunity.

13

That the state court subpoenas to Mr. McConnell were removed to this Court does not affect the application of sovereign immunity, as the federal court's jurisdiction upon removal under 28 U.S.C. § 1442 is derivative of the state court's. *See Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981) ("It is well settled that if the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there.").  Accordingly, "because a federal court's jurisdiction upon removal is derivative of the state court's, the federal court in a removed action is also barred from enforcing a subpoena against the federal government." *Houston Business Journal*, 86 F.3d at 1212; *Estate of Pal*, 2019 WL 4709902, at *2 ("[B[ecause the underlying civil case is in state court, this Court's jurisdiction is derivative of the state court's jurisdiction, and this Court also lacks jurisdiction to enforce the subpoena against the United States Attorney."); *Stauffer*, 2014 WL 12539886, at *3 ("[E]ven if the action is removed to federal court, . . . this Court lacks jurisdiction to enforce a State court issued subpoena."); *see also Smith v. Cromer*, 159 F.3d at 879.

Thus, the subpoenas here, which seek from a Congressional employee information acquired in his official capacity as a staff member of the Senate Armed Services Committee, infringe on sovereign immunity.  Because "[s]overeign immunity is jurisdictional in nature," *Meyer*, 510 U.S. at 475, the party seeking to claim jurisdiction (here, Alfa Bank which issued the subpoenas) bears the burden to establish affirmatively a waiver of that immunity.  As the Supreme Court has made clear, a waiver of sovereign immunity "must be unequivocally expressed in statutory text and will not be implied."  *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citation omitted).

14

Alfa Bank cannot identify any waiver of sovereign immunity applicable to the subpoenas here.  The only plausible waiver, the general waiver for non-monetary suits by those injured by agency action provided for in the Administrative Procedure Act, 5 U.S.C. § 702, *see COMSAT Corp. v. Nat'l Science Foundation*, 190 F.3d 269, 274 (4th Cir. 1999) ("When the government is not a party, the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas.") (citing *Smith v. Cromer*, 159 F.3d at 881), does not apply here for two reasons.  First, the APA waiver does not apply to Congress.  *See* 5 U.S.C. § 702 (waiving sovereign immunity to challenge certain "agency" action); *id.* § 701(b)(1)(A) (defining "agency," for which sovereign immunity waiver applies, as excluding "the Congress"); *see also Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984) ("[T]he Congress is not an 'agency' as defined under the Administrative Procedure Act."); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 99-100 (D.D.C. 1999) (holding that APA's waiver of sovereign immunity was not applicable to Legislative Branch), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) (per curiam); *Rockefeller*, 234 Fed. App'x at 856 (APA waiver of sovereign immunity not apply in suit against Members of Congress).  Second, the APA waiver does not waive immunity in state court, *see* 5 U.S.C. § 702 (confining APA sovereign immunity waiver to "a court of the United States"), and the district court's jurisdiction in this removed matter is derivative of the state court's.[4]

Accordingly, there being no waiver of sovereign immunity for state-court subpoenas to Congress, the Court lacks jurisdiction and the subpoenas to Mr. McConnell must be quashed.

---

[4]  That is why parties in state court suits that issue subpoenas to Executive agencies, and receive responses under the agencies' *Touhy* regulations, cannot obtain review of the agency's response by a motion to enforce the subpoena in the underlying suit, but rather, must file a separate APA suit.  *See Houston Business Journal*, 86 F.3d at 1212; *Santini*, 456 F. Supp. 2d at 71-72; *Estate of Pal*, 2019 WL 4709902, at *3.

II.     **The Speech or Debate Clause Protects Senators and Their Staff From Being Compelled to Testify or Produce Documents Regarding Matters Within the Legislative Sphere.**

The subpoenas to Mr. McConnell should also be quashed because he is protected from compelled testimony or document production by the Speech or Debate Clause of the Constitution. The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const. art. I, § 6, cl. 1. The Clause's purpose "is to ensure that the legislative function the Constitution allocates to Congress may be performed independently," *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975), "without regard to the distractions of private civil litigation or the perils of criminal prosecution."  *Brown & Williamson*, 62 F.3d at 415; *see also McCarthy v. Pelosi*, — F.4th —, 2021 WL 3043280, at *2 (D.C. Cir. July 20, 2021) ("The central object of the Speech or Debate Clause is to protect the independence and integrity of the legislature.") (internal quotation marks and citation omitted).  To effectuate this independence, the Speech or Debate Clause provides Members of Congress with immunity from suit and "a testimonial and non-disclosure privilege" that protects Members "from being compelled to answer questions about legislative activity or produce legislative materials."  *Howard v. Office of Chief Administrative Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013). This privilege provides Members with absolute immunity from subpoenas for testimony, *Eastland*, 421 U.S. at 499 n.13, as well as for documents, *Brown & Williamson*, 62 F.3d at 420; *MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988) (quashing subpoena and noting that "[d]iscovery procedures can prove just as intrusive" to Members and staff as a lawsuit); *United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246,

16

248-49 (D.D.C. 1981); *Tavoulareas v. Piro*, 93 F.R.D. 11, 18 (D.D.C. 1981).  As this Circuit has

stated, for matters protected by the Speech or Debate Clause, "[a] party is no more entitled to

compel congressional testimony – or production of documents – than it is to sue congressmen."

*Brown & Williamson*, 62 F.3d at 421 ("We do not perceive a difference in the vigor with which

the privilege protects against compelling a congressman's testimony as opposed to the protection

it provides against suit."); *see also Miller v. Transamerican Press*, 709 F.2d 524, 529 (9th Cir.

1983) (Members of Congress "'may not be made to answer – *either in terms of questions* or in

terms of defending [themselves] from prosecution' regarding legislative acts.") (quoting *Gravel*

*v. United States*, 408 U.S. 606, 616 (1972)).

The Supreme Court has made clear that the Clause applies not only to Members of

Congress but also to congressional aides acting in the legislative sphere.  *See Gravel*, 408 U.S. at

618 (holding that Speech or Debate Clause protection "applies not only to a Member but also to

his aides insofar as the conduct of the latter would be a protected legislative act if performed by

the Member himself"); *Eastland*, 421 U.S. at 507 (Speech or Debate Clause protects

congressional staff as well as Members); *see also McCarthy*, 2021 WL 3043280, at *3 ("[I]t is

well established that the Clause's protections extend to Congressional aides and staff."); *Rangel*

*v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) ("Although the Clause refers to 'Senators and

Representatives,' it also covers legislative aides.").  Hence, if legislative conduct would be immune

when performed by a Member of Congress, then the conduct is also immune when performed by

congressional staff.  *See Gravel*, 408 U.S. at 618-22; *McCarthy*, 2021 WL 3043280, at *3.

In applying the Clause, the Supreme Court has counseled that, because "the guarantees of

[the Speech or Debate] Clause are vitally important to our system of government," they "are

entitled to be treated by the courts with the sensitivity that such important values require."

*Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).  And so, "[w]ithout exception," the Supreme

Court has "read the Speech or Debate Clause broadly to effectuate its purposes."  *Eastland*, 421

U.S. at 501; *McCarthy*, 2021 WL 3043280, at *3 (same); *Rangel*, 785 F.3d at 23 (same).  Hence,

in applying the Speech or Debate Clause, the Court has held that the Clause provides immunity

for all actions "within the sphere of legitimate legislative activity," *Eastland*, 421 U.S. at 501,

which encompasses "anything 'generally done in a session of the House by one of its members in

relation to the business before it.'"  *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (quoting

*Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)); *see also Gravel*, 408 U.S. at 625 (Clause

precludes inquiry into "the deliberative and communicative processes by which Members par-

ticipate in committee and House proceedings with respect to the consideration and passage or

rejection of proposed legislation or with respect to other matters which the Constitution places

within the jurisdiction of either House[.]"); *McCarthy*, 2021 WL 3043280, at *3 (same).

When the Speech or Debate Clause privilege is raised in defense to a subpoena, the only

question to resolve is whether the matters about which testimony or documents are sought "fall

within the 'sphere of legitimate legislative activity.'"  *Eastland*, 421 U.S. at 501.  "[O]nce it is

determined that Members are acting within the 'legitimate legislative sphere' the Speech or

Debate Clause is an *absolute* bar to interference."  *Id.* at 503 (emphasis added); *see MINPECO,*

*S.A.*, 844 F.2d at 862 ("Once the legislative act test is met, the principle is absolute.") (internal

quotation marks and citation omitted).

The instant subpoenas seek to compel from a staff member of the Senate Armed Services

Committee the production of materials he obtained on behalf of the Committee and testimony

about and documents related to actions he took to gather and analyze information on subjects

within the Committee's legislative and oversight jurisdiction.  As previously stated, Mr.

McConnell is a Professional Staff Member of the Committee, whose primary policy area of

responsibility is the cybersecurity of Internet Protocol networks affecting national security,

including the threat of influence operations and election interference conducted through

cyberspace.  *See* King Decl. ¶ 4.[5]  As part of his duties, he serves as the principal staff member

for Chairman Jack Reed[6] for oversight of the National Security Agency and U.S. Cyber

Command, two Department of Defense entities with responsibility to collect intelligence and

defend against foreign influence operations conducted in cyberspace.  *Id.*  He also serves as the

primary Majority staff person (and, before 2021, Minority staff person) for the Subcommittee on

Cybersecurity of the Armed Services Committee, which was formed in January 2017 in light of

the increasing national security threats in cyberspace.  *Id.*  Mr. McConnell also supports Senator

Reed in his *ex officio* service on the Senate Select Committee on Intelligence, which shares

jurisdiction over cyber activities in these areas.  *See id.* ¶ 7; S. Res. 400, Sec. 2(a)(3)(B), 94th

Cong., 2d Sess. (1976) ("The Chairman and Ranking Member of the Committee on Armed

Services. . . shall be ex officio members of the select Committee.").  Since 2016, Mr. McConnell

has worked on the Committee's efforts to understand and counter Russian malign cyber activities

---

[5]  The Senate authorized Ms. King's declaration solely to provide the basis for assertion of the Committee's privilege in this matter, expressly noting that its submission in no way waives the Speech or Debate Clause privilege for any of the information sought by Alfa Bank's subpoenas.  *See* 167 Cong. Rec. S5055 (daily ed. July 22, 2021) (statement of Majority Leader Schumer on S. Res. 316) ("By submitting this limited declaration solely to establish its privilege, the Committee is not waiving, and, indeed, continues to assert, its absolute Speech or Debate privilege against being compelled to produce any information in this matter.").

[6]  Senator Reed was the Ranking Minority Member of the Armed Services Committee from 2015 to 2021, and became Chairman of the Committee in February 2021.

and Russian efforts to interfere in U.S. elections. *See* King Decl. ¶ 8.

In fulfilling these committee responsibilities, Mr. McConnell gathers and analyzes information from numerous sources inside and outside the government regarding the highly technical subject of cyber threats and other cyber activities, including Russian malign foreign efforts to influence U.S. elections. *See id.* ¶¶ 3, 8 ("Mr. McConnell has worked extensively on the Committee's efforts to understand and counter Russian malign cyber activities and Russian efforts to interfere in U.S. elections, including through the informal gathering and analysis of information about these matters."). As part of his work collecting and reviewing information regarding Russian malign cyber activities and interference in U.S. elections, "Mr. McConnell examined for the Committee the publicly-reported allegations regarding possible internet communications between Alfa Bank and the Trump Organization servers by gathering information and analysis from contacts both within and outside of Congress." *Id.* ¶ 10.

Such information gathering and analysis is a vital part of the Committee's and Senator Reed's consideration of whether, and in what fashion, to undertake legislative, investigative, or oversight activities on the matter. The Committee has devoted significant and sustained effort to studying and informing itself on issues surrounding foreign cyber influence efforts, including Russia's interference in the 2016 elections, and what responses by the U.S. Government are needed to protect against and counter such activities. *See, e.g.*, *Foreign Cyberthreats to the United States: Hearing before the Senate Comm. on Armed Services*, S. Hrg. No. 115-418, at 3-5, 17-18 (Jan. 5, 2017) (Senator Reed noting "widely reported instances of Russian hacking and disinformation that raised concerns regarding the election of 2016," and "there is still much we do not know, but Russia's involvement in these intrusions does not appear to be in any doubt,"

and questioning witnesses on subject); *Cyber Strategy, Policy, and Organization: Hearings before the Senate Comm. on Armed Services*, S. Hrg. No. 115-181, at 49 (Mar. 2 & 17, 2017) (statement of Sen. Reed) ("Russia's campaign last year to influence our election undermined faith in our democracy, and the objective truth of the news has been matched or surpassed by its years' long efforts to undermine democracy and the free press in Europe, the NATO alliance, and European unity in general.  Russia's ambitious and aggressive use of information as a weapon adds a whole new dimension and urgency to the task of confronting and deterring hostile actions through cyberspace."); *The Roles and Responsibilities for Defending the Nation from Cyber Attack: Hearing before the Senate Comm. on Armed Services*, S. Hrg. No. 115-597, at 4 (Oct. 19, 2017) (statement of Sen. Reed) ("There, indeed, is urgency to our task. Russia attacked our election last year. They similarly attacked multiple European countries, the NATO alliance, and the European Union. The intelligence community assures us that Russia will attack our upcoming midterm elections."); *id.* at 21 (Chairman McCain, in questioning witness about issues regarding "responsibility and authority of Department of Defense" in protecting against foreign cyber attacks on elections, noting that "those issues could be corrected by legislation"); *China and Russia: Hearing before the Senate Comm. on Armed Services*, S. Hrg. No. 116-263, at 3 (Jan. 29, 2019) (statement of Sen. Reed) ("Russia is also conducting a campaign of hybrid warfare below the level of direct military conflict to harm Western nations without firing a single shot. Our democracy was attacked in 2016 and such attacks continue to this day with increasing sophistication. . . . . I am interested in hearing our witnesses' assessment of the national security threat posed by Russia's hybrid warfare campaign and their recommendations for how we should prioritize our resources to counter Russia's malign aggression."); *The Department of Defense's*

*Role in Protecting Democratic Elections: Hearing before the Subcomm. on Cybersecurity of the Senate Comm. on Armed Services*, S. Hrg. No. 115-862 (Feb. 13, 2018); *Cyber-Enabled Information Operations: Hearing before the Subcomm. on Cybersecurity of the Senate Comm. on Armed Services*, S. Hrg. No. 115-426 (Apr. 27, 2017).  Mr. McConnell's activities to gather information on behalf of the Committee directly support the Committee's legislative and oversight activities on these issues.  *See* King Decl. ¶ 5 ("Mr. McConnell serves as the primary staff person for the conduct of public and classified hearings of the Committee and the Subcommittee on Cybersecurity on cyber activities, cyber security, and related issues, including Russian cyber efforts to interfere in U.S. elections.").

In addition, Mr. McConnell's efforts to gather and analyze information on the allegations of possible internet communications between Alfa Bank and Trump Organization servers also supported Senator Reed's *ex officio* service on the Select Committee on Intelligence.  That committee undertook extraordinary efforts to review and analyze issues surrounding cyber measures and other malign activities undertaken by Russia to interfere in U.S. elections.  The Intelligence Committee engaged in a lengthy investigation of Russian interference in the 2016 election, and, as part of that investigation, specifically reviewed the allegations regarding communications between Alfa Bank and Trump Organization.  *See Russian Active Measures, Campaigns, and Interference in the 2016 U.S. Election*, S. Rep. No. 116-290, at 1181-86.  In addition, throughout the 115th Congress, the Intelligence Committee "continued to focus on the threat posed by Russia's malign activities."  *Report of the Senate Select Comm. on Intelligence for the period Jan. 3, 2017 to Jan. 3, 2019*, S. Rep. No. 116-20, at 13 (2020) (reporting on committee's activities during 115th Congress).  As part of this focus, the Intelligence Committee

22

> held open and closed hearings addressing the threat from Russia and provided
> oversight of the [Intelligence Community's] analysis and reporting on this threat.
> Hearings focused on, among other topics, Russian cyber-, asymmetric-, and
> counterintelligence threats; Russia's national security calculus and decision-
> making processes; [and] Russian 'active measures,' to include disinformation and
> misinformation, as well as threats to election systems and processes.

*Id.* Hence, Mr. McConnell's information gathering and analysis regarding the allegations about

possible internet communications between Alfa Bank and Trump Organization servers supported

the robust consideration and deliberation of important national security issues undertaken by both

the Armed Services and Intelligence Committees.

Mr. McConnell's information gathering on these issues has also supported the

Committee's consideration of legislation involving cyber-related matters. Mr. McConnell

worked extensively on the annual national defense authorization acts that the Committee

considered and reported to the Senate, which involved significant provisions addressing cyber

issues. *See* King Decl. ¶ 6; William M. (Mac) Thornberry National Defense Authorization Act

for FY 2021, Pub. L. No. 116-283, Div. A, Title XVII (2021) (Cyberspace-Related Matters);

National Defense Authorization Act for FY 2020, Pub. L. No. 116-92, Div. A, Title XVI,

Subtitle C (2019); John S. McCain National Defense Authorization Act for FY 2019, Pub. L. No.

115-232, Div. A, Title XVI, Subtitle C (2018); National Defense Authorization Act for FY 2018,

Pub. L. No. 115-91, Div. A, Title XVI, Subtitle C (2017). In addition, "Mr. McConnell assisted

in the preparation of Senate floor statements for then-Ranking Member Reed addressing Russia's

malign activities and hybrid warfare, including Russian disinformation and influence campaigns

conducted through cyberspace." King Decl. ¶ 9 (citing statements in *Congressional Record*).

The activities Mr. McConnell undertook and the communications he engaged in to gather

information and conduct analysis regarding these matters were conducted on behalf of the

Committee and to support the Committee's legislative and oversight functions regarding matters

within its jurisdiction.  Congressional information-gathering activities by committee staff in

support of a committee's legislative and oversight functions, such as Mr. McConnell's activities

regarding this matter, are a critical part of legislative activity, *see McGrain v. Daugherty*, 273

U.S. 135, 175 (1927) ("A legislative body cannot legislate wisely or effectively in the absence of

information respecting the conditions which the legislation is intended to affect or change."),

and, whether done through formal or informal methods, are accordingly protected by the Speech

or Debate Clause.  *See McSurely v. McClellan,* 553 F.2d 1277, 1286-87 (D.C. Cir. 1976) (*en

banc*) ("We have no doubt that information gathering, whether by issuance of subpoenas or *field

work by a Senator or his staff*, is essential to informed deliberation over proposed legislation. . . .

The acquisition of knowledge through informal sources is a necessary concomitant of legislative

conduct and thus should be within the ambit of the privilege so that congressmen are able to

discharge their constitutional duties properly.") (emphasis added); *In re Grand Jury Subpoenas*,

571 F.3d 1200, 1202 (D.C. Cir. 2009) ("Legislative fact-finding is therefore a protected

activity."); *Miller v. Transamerican Press, Inc.*, 709 F.2d at 530 ("Obtaining information

pertinent to potential legislation or investigation is one of the 'things generally done in a session

of the House,' concerning matters within 'the legitimate legislative sphere.'" (quoting *Kilbourn*,

103 U.S. at 204, and *Eastland*, 421 U.S. at 503)); *Williams v. Johnson*, 597 F. Supp. 2d 107, 114

(D.D.C. 2009) ("[T]he Court is persuaded that, regardless of whether conducted formally or

informally, 'the acquiring of information [is] an activity that is a necessary concomitant of

legislative conduct and thus should be within the ambit of the privilege so that [legislators] are

able to discharge their duties properly.'") (quoting *Dominion Cogen, D.C., Inc. v. District of

*Columbia*, 878 F. Supp. 258, 263 (D.D.C. 1995) (internal quotation marks omitted)); *Ass'n of Am. Physicians and Surgeons v. Schiff*, — F. Supp. 3d —, 2021 WL 354174, at *7 (D.D.C. Feb. 2, 2021) ("[T]he Court finds that the information gathering letters constitute protected legislative acts."), *appeal docketed*, No. 21-5080; *see also Citizens Union of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 151 (S.D.N.Y. 2017) ("The legislative privilege also protects Congressional fact- and information-gathering activities about the subject of potential legislation, as well as documents regarding or reflecting the fruit of this research . . . The gathering of facts and other information – whether by formal means, such as a subpoena, or informal means, such as field work – is protected[.]"); *SEC v. Committee on Ways and Means*, 161 F. Supp. 3d at 236 ("[T]he applicability of the Speech or Debate Clause's protections does not hinge on the formality of the investigation.").  In sum, informal information gathering in support of the legislative work of Congress falls within the protections of the Speech or Debate Clause, and Mr. McConnell is protected from being compelled to testify or produce Committee documents about such activities.  *See Schiff*, 2021 WL 354174, at *7 ("Supreme Court and D.C. Circuit precedent make clear that investigating and information gathering enjoy protection under the Clause.").

In *Brown & Williamson*, the D.C. Circuit rejected on Speech or Debate Clause grounds an attempt to subpoena congressional committee information similar to Alfa Bank's subpoenas here. In that case, documents allegedly stolen from Brown & Williamson Tobacco Corporation were provided to two members of the Subcommittee on Health and the Environment of the House Committee on Energy and Commerce.  62 F.3d at 412.  Brown & Williamson was engaged in litigation at the time and, as part of that lawsuit, issued third-party subpoenas to the two Members of Congress for all company documents in their possession.  *Id.*  The D.C. Circuit,

affirming the quashing of the subpoenas, held that, even if the documents had been stolen and provided to Congress, the Members of Congress were protected by the Speech or Debate Clause and could not be compelled to produce the Subcommittee's documents. *Id.* at 415-21.

Alfa Bank's subpoenas here similarly seek discovery of broad categories of Committee information related to the allegations of Alfa Bank internet communications with Trump Organization servers, including what information Mr. McConnell collected for the Committee, as well as his contacts and communications with sources of information. *See* Subpoenas, Exhibits A and B. Such an attempt to compel disclosure of committee information, as the Court of Appeals found in *Brown & Williamson*, substantially intrudes into the Committee's information gathering in support of its legislative function and is thus barred by the Speech or Debate Clause. *See Brown & Williamson*, 62 F.3d at 423 ("B & W's claim at bottom, is to a right to engage in broad scale discovery of documents in a congressional file that comes from third parties. The Speech or Debate Clause bars this claim.").

Indeed, the D.C. Circuit in *Brown & Williamson* specifically rejected the effort of a private company to pry into Committee activities and documents to discover the source of materials and information received by the Committee, as Alfa Bank seeks to do here. In that case, the company, citing *Gravel*'s suggestion that the Speech or Debate Clause's testimonial privilege may not shield a Senator or his aide from testifying to a grand jury about the source of classified documents "as long as no legislative act is implicated," *Gravel*, 408 U.S. at 628, argued that the Clause's "testimonial privilege does not categorically bar efforts to discover the source of documents that Congress has obtained." *Brown & Williamson*, 62 F.3d at 419. The Court of Appeals responded:

> We think that is a vast overreading of *Gravel*; if that were so, any person facing
> the prospect of testimony before Congress could initiate discovery proceedings to
> reach documents that Congress had not prepared itself. That certainly would
> "chill" any congressional inquiry; indeed, it would cripple it.  It should first be
> noted that in parsing *Gravel* the questioning allowed by the Supreme Court was
> part of a grand jury investigation -- a factor the Court repeatedly emphasized.  It
> does not necessarily follow from *Gravel* that the same rule would apply to similar
> efforts stemming from a civil action brought by a third party.

*Id.* (internal citation omitted).  The court concluded that, reading *Gravel* in light of the Supreme

Court's subsequent decision in *Eastland*, "*Gravel*'s sensitivities to the existence of criminal

proceedings against persons other than Members of Congress at least suggest that the testimonial

privilege might be less stringently applied when inconsistent with a sovereign interest," as in a

grand jury criminal context, "but is *'absolute' in all other contexts*," *id.* (emphasis added), such

as third-party civil subpoenas like those in *Brown & Williamson* and here.  Accordingly, the

Clause erects an absolute bar to Alfa Bank's attempt to compel discovery from the Committee

regarding its information-gathering activities and the sources of its information.

In its correspondence, Alfa Bank challenged the application of the Clause's immunity to

the informal information gathering conducted by Mr. McConnell, arguing that the Clause only

protects matters that are directly linked to an "identifiable legislative act."  Not only is this

argument refuted on its own terms by the multiple legislative activities undertaken by the Armed

Service and Intelligence Committees identified above, *see supra* at 20-23; King Decl. ¶¶ 5-9, but

it also is incorrect as a matter of law as it misunderstands the scope of the Clause and the nature

of legislative activity.  An important part of the legislative function protected by the Clause is

Congress' ability to investigate and obtain information in support of its constitutional duties.  As

the Supreme Court has explained, "[a] legislative body cannot legislate wisely or effectively in the

absence of information respecting the conditions which the legislation is intended to affect or

change; and where the legislative body does not itself possess the requisite information – which not infrequently is true – recourse must be had to others who do possess it." *McGrain*, 273 U.S. at 175.

To suggest, as Alfa Bank does, that the Committee must identify a particular formal legislative act tied to Mr. McConnell's actions inverts the role that information gathering plays in the legislative process protected by the Clause. In order for a committee to decide whether to open a formal investigation, engage in focused oversight into a particular matter in the Executive Branch, or determine whether to propose legislation, it needs information about the matter at issue. One purpose of staff information-gathering activities is to enable the committee to determine *whether* it should undertake any particular formal legislative action in a given area. *See McGrain*, 273 U.S. at 177 (Congress has authority to investigate any subject about which it *may* legislate if it "would be materially aided by the information"). As the Supreme Court explained: "The power of inquiry has been employed by Congress throughout our history, over the whole range of the national interests concerning which Congress might legislate or *decide upon due investigation not to legislate*. . . ." *Barenblatt v. United States*, 360 U.S. 109, 111 (1959) (emphasis added).

Alfa Bank's argument would make the Clause's protection of committee information-gathering activities turn on what the committee elected to do *after* considering the information. The Supreme Court has rejected this approach to determining whether congressional actions constitute "legitimate legislative activity." *See Eastland*, 421 U.S. at 509 ("Nor is the legitimacy of a congressional inquiry to be defined by what it produces. The very nature of the investigative function – like any research – is that it takes the searchers up some 'blind alleys' and into non-productive enterprises. To be a valid legislative inquiry there need be no predictable end result."); *In re Chapman*, 166 U.S. 661, 670 (1897); *McGrain*, 273 U.S. at 177-78. Limiting the Clause's

28

scope as Alfa Bank suggests would hamper Congress' ability to gather information necessary to carry out its constitutional functions independently, undermining the purpose of the Speech or Debate Clause.

Alfa Bank's correspondence also argues that Mr. McConnell's discussion with one particular information contact, Dan Jones, fell outside of the Clause's protection because it constituted "publish[ing] information" to Mr. Jones.  Letter from Margaret E. Krawiec to Thomas E. Caballero, May 13, 2021, at 2 (Exhibit H).  Such a characterization is groundless and stretches "publish" beyond any reasonable understanding of that term.  Mr. McConnell sought information and analysis from Mr. Jones and others as part of his information-gathering activities.  That Mr. McConnell may have discussed information that he had gathered for the Committee as part of seeking information and analysis from Mr. Jones does not change the nature of his contact with Mr. Jones.  It is common that staff seeking to obtain information from prospective outside witnesses or subject-matter experts need to discuss with them information the committee has acquired thus far in order to elicit further useful information or to obtain critical expert opinion about the information it has gathered.  Such activity is a vital part of congressional committees' information-gathering efforts – efforts that are critical to enabling committees, and ultimately the Senate and House, to fulfill their legislative responsibilities under the Constitution.  *See* King Decl. ¶ 3 ("[S]taff keep the Committee informed . . . by gathering and analyzing information from open-source and classified sources, both inside and outside Congress, including through briefings by Executive Branch agencies and informal discussions with a wide range of individuals and subject-matter experts in the private, non-profit, and government sectors.  Such information-gathering activities are vital to the Committee's ability to

carry out its constitutional duties for the Senate, particularly in highly technical, rapidly changing, and national-security sensitive areas such as foreign cyber threats.").

Accordingly, the information sought by Alfa Bank's subpoenas to Mr. McConnell is absolutely privileged under the Speech or Debate Clause. The subpoenas, therefore, should be quashed.

## CONCLUSION

For the foregoing reasons, the motion of the Senate Committee on Armed Services and subpoena-respondent Thomas Kirk McConnell should be granted, and Alfa Bank's subpoenas for deposition testimony and production of documents should be quashed.

Respectfully submitted,

 /s/ Patricia Mack Bryan
Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building
Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

Dated: July 27, 2021                    Attorneys for U.S. Senate Committee on Armed
                                        Services and Subpoena-Respondent Thomas Kirk
                                        McConnell

CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2021, copies of the foregoing Motion of Senate

Committee on Armed Services and Thomas Kirk McConnell to Quash Subpoenas,

accompanying Memorandum of Points and Authorities, all exhibits thereto, and proposed order,

were sent by electronic mail and served by first class U.S. Mail on counsel for the subpoena

issuer, at the following addresses:

Terrance Anderson, Jr.
NELSON MULLINS RILEY & SCARBOROUGH LLP
Lynn Financial Center
1905 NW Corporate Blvd., Ste. 310
Boca Raton, FL 33431
(561) 218-8862
tw.anderson@nelsonmullins.com

Jonathan Etra
NELSON MULLINS RILEY & SCARBOROUGH LLP
2 South Biscayne Blvd., 21st Floor
Miami, FL 33131
(305) 373-9447
jonathan.etra@nelsonmullins.com

Margaret E. Krawiec
Michael A. McIntosh
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave. NW
Washington, DC 20005
(202) 371-7000
margaret.krawiec@skadden.com
michael.mcintosh@skadden.com

/s/ Patricia Mack Bryan
Patricia Mack Bryan